IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MELVIN LEE DAVIS**                                                                                     **PLAINTIFF**

v.                                                                                                  1:15-cv-358-JCG

**TOMMY HINTON, STATE OF
MISSISSIPPI, MISSISSIPPI
DEPARTMENT OF CORRECTIONS,
MARSHALL L. FISHER, JACQUELYN
BANKS, MARSHALL TURNER, and
JOHN AND JANE DOES 2-10**                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT AND QUALIFIED IMMUNITY (ECF NO. 60)

BEFORE THE COURT is the Motion to Dismiss Based on Eleventh Amendment and Qualified Immunity (ECF No. 60) filed by Defendants Tommy Hinton, in his official capacity; State of Mississippi; Mississippi Department of Corrections; Marshall Fisher; Jacquelyn Banks; and Marshall Turner. The Motion is fully briefed: Plaintiff Melvin Lee Davis filed a Response in Opposition (ECF No. 62), and Defendants filed a Reply (ECF No. 63). Having considered the submissions of the parties, the record as a whole, and relevant law, the Court determines that Defendants' Motion to Dismiss Based on Eleventh Amendment and Qualified Immunity (ECF No. 60) will be GRANTED. Plaintiff's claims against Defendants Tommy Hinton, in his official capacity; State of Mississippi; Mississippi Department of Corrections; Marshall Fisher; Jacquelyn Banks; and Marshall Turner will be dismissed with prejudice on the basis of Defendants' sovereign immunity and

qualified immunity. The stay of proceedings will be lifted and Plaintiff's claims against Defendant Tommy Hinton, in his individual capacity, will proceed.

I. BACKGROUND

A. Procedural History

Plaintiff Melvin Lee Davis is a federal inmate in the custody of the Mississippi Department of Corrections ("MDOC"). He "is and was at all times … incarcerated in area SMCI II Lockdown at the South Mississippi Correctional Institution" ("SMCI"). Amend. Comp. (ECF No. 46, at 2). Plaintiff filed his original *pro se* Complaint (ECF No. 1) on October 26, 2015, naming Tommy Hinton as the sole defendant and seeking monetary damages pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. On September 20, 2016, the Court held an omnibus hearing,[1] during which Plaintiff expanded upon the allegations in his Complaint and the Court set case management deadlines. *See* Minute Entry Sept. 20, 2016. The parties also consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73. Order Reassigning Case Upon Consent (ECF No. 35).

After observing Plaintiff at the omnibus hearing, the Court concluded that "exceptional circumstances warranting appointment of counsel are present in the instant case" and granted Plaintiff's request for appointment of counsel. Order (ECF No. 32, at 3). The Court appointed G. Morgan Holder, of the law firm Smith & Holder, PLLC, to represent Plaintiff in this matter. Order Appointing Counsel (ECF

---

[1] The omnibus hearing functioned as both a screening hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and an in-person case management conference.

No. 33). Plaintiff was thereafter granted leave to amend his complaint, *see* Text Order Nov. 2, 2016, and he filed his First Amended Complaint (ECF No. 46) on November 5, 2016. His First Amended Complaint added Jacquelyn Banks, Marshall Fisher, Marshall Turner, MDOC, and the State of Mississippi as defendants and made allegations that they violated Plaintiff's constitutional rights. *See* (ECF No. 46, at 3-20).

On April 18, 2017, Defendants Banks, Fisher, Turner, MDOC, the State of Mississippi, and Hinton, in his official capacity only, filed the instant Motion to Dismiss Based on Eleventh Amendment and Qualified Immunity (ECF No. 60) and an accompanying Memorandum in Support (ECF No. 61). The Motion argues that Plaintiffs' claims against Defendants Banks, Fisher, Turner, MDOC, the State of Mississippi, and Hinton, in his official capacity, should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) because Plaintiff's allegations do not overcome their qualified and sovereign immunities. (ECF No. 61, at 3-4).

B. Factual Allegations

Melvin Davis has been incarcerated at SMCI since October 25, 2010. (ECF No. 46, at 2). On June 2, 2015, Mr. Davis witnessed a "brutal assault with a weapon involving numerous inmates and SMCI staff." *Id.* at 10. He says the incident "centered around a prison gang[,] which certain staff members at SMCI assisted in running drugs." *Id.* The following day, he drafted a letter describing the incident and handed it to the correctional officers making unit rounds for delivery to Defendant Banks, Defendant Turner, and other unnamed officers. *Id.*

3

Davis asserts that Defendant Hinton was one of the officers "assisting the gangs in distributing narcotics throughout the campus" and "would control housing assignments for better access to inmates … believed [to be] snitching on gang activities." *Id.* at 9. He says "Defendant Hinton overheard the conversation between Mr. Davis and the other correctional officers" and moments later "gave Mr. Davis a direct order to lay face down in his cell, forced him to place his hands behind his back, and proceeded to violently assault Mr. Davis by stomping on his back area." *Id.* at 10. "As a result of the unprovoked, vicious assault by Defendant Hinton, Mr. Davis sustained personal injuries, including but not limited to, permanent back injuries." *Id.* Davis states that several correctional officers were in a position to assist him and intervene "but refused to do so." *Id.*

Davis asserts that, prior to this attack, he had put Defendants on notice of "critical problems of safety, security, drugs, and violence at SMCI and of the specific risk that the prison conditions created for Mr. Davis." *Id.* at 8. He says that, "[b]y way of verbal statements and letters," he "notified staff lieutenants, corrections officers, Defendant Banks, and other Doe Defendants of the ongoing assaults and threats against him and that he was in danger." *Id.* Davis says that "Defendants reviewed [his letters], letters from other inmates, and other incident reports in which a high rate of deaths, stabbings, and assaults was documented due to the pervasive gang activity at SMCI." *Id.* at 8-9.

Davis also alleges that "[p]rior to and at the time of Mr. Davis's injuries, the following conditions at SMCI posed a substantial risk of harm to SMCI inmates:

4

(a) Fights occurred between inmates on a regular basis resulting in injuries requiring medical attention and hospitalization;
(b) Inmates throughout the prison, and particularly in the area where Mr. Davis was housed, possessed weapons such as shanks and knives;
(c) Weapons were not confiscated from prisoners as required by state law and standard operating procedures;
(d) Stabbings and deaths were often reported;
(e) Critical security posts were either unmanned or manned with inadequate personnel;
(f) Known violent prisoners were not monitored and supervised, which contributed to inmate-on-inmate violence and officer-on-inmate violence;
(g) Locks on the doors to cells often did not work, allowing inmates to avoid being locked down and preventing effective separation of inmates from one another;
(h) Prisoners often slept in cells in which they were not assigned;
(i) Gang leaders exercised control over housing assignments and were permitted to expel prisoners they no longer wanted in their dorms;
(j) Prisoners were allowed to move undetected across the prison campus to unauthorized areas;
(k) Officers were injured by inmates or were reported to injure inmates on several occasions; [and]
(l) Officers assisted gang members in running drugs through the prison.

*Id.* at 7-8. Davis asserts that "The foregoing conditions posed a significant risk of harm to prisoners in violations of clearly established law." *Id.* at 8.

Despite being on notice of these conditions, Davis states that Defendants (1) "failed to take reasonable steps to protect inmates from other inmates and rogue staff," (2) failed to take "reasonable steps to ensure adequate staffing" at SMCI, (3) "continued to permit gangs to control the activities in Area II at SMCI and throughout the prison campus," (3) "failed to ensure that prisoners found with

shanks were properly disciplined to deter inmates from possessing deadly weapons," and (4) "failed to ensure that officers conducted adequate contraband searches." *Id.* at 9-10. He asserts that "Defendants Fisher, Banks, Turner, and Sims[2]" failed to promulgate, implement, and enforce procedures, rules, policies, and/or customs prohibiting the use of excessive force and failed to adequately supervise Defendant Hinton." *Id.* at 11-12. These failures "directly led to the use of excessive force against Mr. Davis." *Id.* at 11.

Davis asserts that the following "written and/or unwritten customs, policies, practices, and procedures" were implemented by Defendants:

- Maintaining a custom or practice of tacit approval and/or tolerance of the use of excessive force upon inmates by officers employed by the MDOC and SMCI;
- Permitting officers employed by the [State of Mississippi and MDOC], including Defendant Hinton and other Doe Defendants, to carry out duties while experiencing significant emotional and psychological issues, and thus, causing its citizens, including Mr. Davis in the instant cause, to have their constitutional rights trampled upon;
- Failure to provide law enforcement training policies for limiting the excessive use of force; and
- Allowing inmates with impeccable behavior records to be placed in maximum security with extremely dangerous and violent inmates in retaliation for attempts to inform others of violent incidents.

*Id.* at 17. Davis asserts that these policies, customs, and practices "condoned and fostered the unconstitutional conduct of Defendant Hinton, and were a direct and proximate cause of the damages and injuries sustained by Mr. Davis." *Id.* at 15.

---

[2] It is not clear who Sims is or why Sims is identified as a defendant at various points in the Amended Complaint. Sims is not listed as a defendant in the caption or the preliminary allegations identifying culpable parties. The Court will disregard allegations involving or referencing "Sims."

6

Finally, he alleges that "Defendants Turner and Banks failed to adequately train and supervise Defendant Hinton" and "Defendant Fisher failed to adequately train and supervise Defendants Banks and Turner." *Id.* at 18. Their "careless and reckless training and supervision" allowed officers to use excessive force against inmates, allowed retaliation against inmates "for attempting to inform of assaults," and allowed "prison gang to oversee drug operations on the prison campus." *Id.* at 18-19. He says he has been housed in the Maximum Security Unit in Area II of SMCI, "a zone reserved for violent inmates with a history of assaulting officers and murdering other inmates," in "retaliation for filing the instant lawsuit." *Id.* at 11, 20.

## II. DISCUSSION

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts all well pleaded facts as true and views them in the light most favorable to Plaintiff. *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199 (5th Cir. 2016). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative

7

level." *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Furthermore, claims and supporting factual allegations must be raised in a complaint; it is not enough to present supporting factual allegations in a response to a motion to dismiss. *See Cevallos v. Silva*, 541 F. App'x 390, 393-94 (5th Cir. 2013) ("Even if [plaintiff's] Response stated a claim for relief cognizable under *Twombly*, the *complaint* must contain either direct allegations on every material point necessary to sustain recovery or contain allegations from which an inference may be fairly drawn that evidence will be introduced at trial.") (emphasis in original); *see also Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion…is not properly before the court.").

A motion to dismiss pursuant to Rule 12(b)(1) should be granted "when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "When ruling on the motion, the district court may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts." *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017), *cert. denied,* No. 17-4, 2017 WL 2870054 (U.S. Oct. 2, 2017) (citing *Ramming v. United States*, 281 F.3d 158, 161

(5th Cir. 2001)). The burden of proof rests on the party asserting the existence of jurisdiction. *Id.* (citing *Ramming*, 284 F.3d at 161).

B. <u>Analysis</u>

In their Motion to Dismiss (ECF No. 60), Defendants argue that Eleventh Amendment sovereign immunity bars Plaintiffs' claims against the State of Mississippi and MDOC, and against Banks, Fisher, Turner, and Hinton in their official capacities. Defendants also argue that Banks, Fisher, and Turner are entitled to qualified immunity for claims against them in their individual capacities. Specifically, Defendants argue that Plaintiff has (1) failed to "demonstrate a violation of clearly established right by Defendants Fisher, Banks, and Turner," and (2) failed to allege facts demonstrating the deliberate indifference of Fisher, Banks, and Turner towards a serious risk of harm to Plaintiff. (ECF No. 61, at 10-24). Plaintiff responds "conced[ing] the Eleventh Amendment issues of the instant Motion," but maintaining "that the factual allegations and allegations of law stated in his First Amended Complaint satisfies the pleading requirements [such that] defendants Fisher, Banks, and Turner are not entitled to qualified immunity." (ECF No. 62, at 2). After reviewing the allegations in Plaintiff's First Amended Complaint, the Court must conclude that Plaintiff's allegations fail to overcome Defendants Fisher, Banks, and Turner's qualified immunity.

   i. <u>Plaintiff's Claims Against the State of Mississippi, MDOC, and Banks, Fisher, Turner, and Hinton, in Their Official Capacities, are Barred by the Eleventh Amendment</u>

9

"The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has explicitly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 11 (1890); *Ysleta del Sur Pueblo v. Texas*, 36 F.3d 1325, 1335 (5th Cir. 1994)). Congress has not abrogated state sovereign immunity under 42 U.S.C. § 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 339-40 (1979); *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)). And the State of Mississippi has not waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Accordingly, the Eleventh Amendment bars Plaintiff's claims against the State of Mississippi.

"[A] state's Eleventh Amendment immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the state. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing *Vogt v. Bd. of Comm'rs,* 294 F.3d 684, 688-89 (5th Cir. 2002)). MDOC is an arm of the State of Mississippi. *Reeves v. King*, No 1:13-cv-492-KS-MTP, 2015 WL 461685, at *3-4 (S.D. Miss. Feb. 4, 2015). The Eleventh Amendment therefore also bars Plaintiff's claims against MDOC.

"The Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407,

412 (5th Cir. 2004)). This is because "a suit against a state official in his or her official capacity … is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, an exception to this general rule has been carved out for suits against state officers in their official capacity that seek injunctive relief for violations of federal law. *Id.* n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex Parte Young*, 209 U.S. 123 (1908)). Defendants Banks, Fisher, Turner, and Hinton were all employees and officers of MDOC at the time of the incidents alleged in Plaintiff's First Amended Complaint. (ECF No. 46, at 3-6). Because Plaintiff seeks only monetary damages – not injunctive relief – the Eleventh Amendment bars Plaintiff's claims against Defendants Banks, Fisher, Turner, and Hinton in their official capacities.

As conceded by Plaintiff, his claims against the State of Mississippi, MDOC, and Defendants Banks, Fisher, Turner, and Hinton, in their official capacities, are barred by sovereign immunity under the Eleventh Amendment. These claims will be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

ii. <u>Plaintiff's Claims Against Banks, Fisher, and Turner, in Their Individual Capacities, are Barred by Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

11

*Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, a government official is entitled to immunity from suit unless (1) Plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). When a government official raises the defense of qualified immunity to a Section 1983 claim, the plaintiff "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not particularly within the knowledge of the defendants." *Schultea v. Wood,* 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc). The plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[3] *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The Eighth Amendment's protection against cruel and unusual punishment prohibits deprivations that are not specifically a part of a prison sentence, but are "suffered during imprisonment." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)). Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other prisoners or prison staff. *Hill v.*

---

[3] The Eighth Amendment is made applicable to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991).

12

*Thomas,* 326 F. App'x 736, 736 (5th Cir. 2009); *Horton v. Cockrell,* 70 F.3d 397, 400 (5th Cir. 1995).

In order to prevail on a claim that prison officials failed to protect an inmate from harm, the Plaintiff must establish "that he [was] incarcerated under conditions posing a substantial risk of serious harm" and that the prison official's state of mind towards inmate's health or safety was one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official exhibits deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, establishing an Eighth Amendment violation requires that a prisoner prove (1) an "objective exposure to a substantial risk of serious harm," (2) the prison official's subjective knowledge of that risk, and (3) the prison official's disregard for that risk. *Gobert v. Caldwell,* 463 F.3d 339, 345-46 (5th Cir. 2006).

Defendants can only be held liable for their own actions or inactions under 42 U.S.C. § 1983; liability may not be found by way of a respondeat superior theory. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). But supervisors "can be held liable when the 'enforcement of a policy or practice results in a deprivation of federally protected rights.'" *Id.* (quoting *Alton v. Texas A&M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999)). The policy or practice must be "so deficient that [it] 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)) (citations omitted).

In general, the Court finds that Plaintiff's allegations are far too general and nonspecific to any one defendant to satisfy the heightened pleading standard necessary to overcome the defense of qualified immunity. First, Plaintiff has not identified the actions or inactions of Defendants Fisher, Banks, and Turner that subjected Plaintiff to a substantial risk of serious bodily harm. Second, even assuming arguendo that Defendants did subject Plaintiff to such a risk, Plaintiff has not established that these Defendants were subjectively aware that their actions or inactions did so. Given that the Court concludes Plaintiff has failed to establish a prima facie Eighth Amendment violation claim against Fisher, Banks, or Turner, these Defendants are entitled to qualified immunity.

Plaintiff alleges that Banks, Fisher, and Turner, in their supervisory roles at MDOC and SMCI, promulgated policies, customs, and practices that condoned Hinton's use of excessive force on Plaintiff. Plaintiff asserts that these Defendants (1) maintained a custom of tolerating officers' use of excessive force upon inmates at SMCI, (2) permitted officers to perform their duties while subjected to "significant emotional and psychological issues," (3) failed to adequately train officers on the use of appropriate force, (4) allowed inmates to be placed in maximum security in retaliation for informing on violent incidents, and (5) otherwise maintained inadequate policies and practices related to (a) hiring, training, and disciplining officers and (b) investigating officer wrongdoing. (ECF No. 46, at 16-17).

14

However, Plaintiff's allegations do not truly identify any policy or practice promulgated or maintained by Fisher, Banks, or Turner. These allegations do not describe the substance of any policy, practice, or training program; they merely assert conclusory shortcomings of whatever policies, practices, and programs exist. Moreover, to the extent that a custom of tolerating the use of excessive force can be considered a custom that could result in the violation of inmates' constitutional rights, Plaintiff's allegations do not indicate that such a custom was the "moving force" behind Hinton assaulting Plaintiff. Rather, Plaintiff describes Hinton's intentional decision to attack Plaintiff in circumstances otherwise warranting no use of any force. Any policies, practices, and customs regarding the use of force in officer-inmate interactions would have no bearing on Hinton's decision to attack Plaintiff for personal reasons.

Assuming, for the sake of argument, that Defendants Fisher, Banks, and Turner were personally responsible for a policy, custom, or practice that somehow subjected Plaintiff to a substantial risk of harm, Plaintiff has not established that these Defendants were subjectively aware of such a risk to Plaintiff. With the exception of a letter written to Defendant Banks the day before the assault, Plaintiff identifies no specific act by which any individual defendant was put on notice as to any substantial risk of harm to Plaintiff. Plaintiff otherwise makes general assertions about Defendants, collectively: that Plaintiff notified Defendants, "[b]y way of verbal statements and letters," of "critical problems of safety, security, drugs, and violence at SMCI and of the specific risk that the prison conditions created for

15

Mr. Davis;" (ECF No. 46, at 8); and that "Defendants reviewed [his letters], letters from other inmates, and other incident reports" documenting deadly assaults related to "pervasive gang activity." *Id.* at 8-9. Other than a letter to Banks sent the day before the assault, Plaintiff identifies no specific communications between himself and individual defendants. He similarly does not point to any specific letter from other inmates or incident report, nor does he identify the content of any individual letter or report. These general allegations are insufficient to establish that any individual defendant was subjectively aware of a substantial risk of harm to the Plaintiff.

Similarly, Plaintiff's general allegations about prior conditions at SMCI lack the required specificity and similarity to the assault on Plaintiff to have made any individual defendant subjectively aware that Hinton or other correctional officers posed a substantial risk of harm to Plaintiff. All but two allegations – "officers were injured by inmates or were reported to injure inmates on several occasions" and "officers assisted gang members in running drugs through the prison" – paint a picture of inmate-on-inmate violence rather than officer-on-inmate violence. Moreover, these two relevant allegations are too generalized because they do not point to any specific incidents illustrating the trends described (i.e. instances in which Hinton or another officer assaulted an inmate). (ECF No. 46, at 7-8). The Fifth Circuit has explained that

> "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be

> exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party."

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (emphasis in original) (citations omitted). Plaintiff has failed to identify a pattern of similar violations such that any individual defendant would have been subjectively aware of a substantial risk of harm to Plaintiff.

Having determined that Plaintiff's allegations fail to establish (1) that the actions or inactions of Defendants Banks, Fisher, or Turner subjected Plaintiff to an objective, substantial risk of serious bodily harm, and (2) that Defendants Banks, Fisher, or Turner were subjectively aware of any such risk of harm to Plaintiff, the Court need not address whether these Defendants disregarded a known substantial risk of serious bodily harm to Plaintiff. The Court must find that Defendants Banks, Fisher, and Turner are entitled to qualified immunity because Plaintiff has failed to establish Defendants' deliberate indifference towards a substantial risk of harm to Plaintiff.

Finally, Plaintiff's allegations that his housing in maximum security is unconstitutional retaliation for having filed this lawsuit, or is otherwise an unconstitutional housing assignment, are foreclosed as a matter of law. To the extent that Plaintiff asserts a claim of retaliation for filing the instant suit, his claim must be dismissed for failure to exhaust the claim before filing suit. Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110

Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), applies and mandates that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] … by a prisoner … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The administrative grievance process must be exhausted "pre-filing." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

Although "failure to exhaust is an affirmative defense under the PLRA," and inmates are therefore "not required to specifically plead or demonstrate exhaustion in their complaints," a complaint is nonetheless "subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *see also Torns v. Miss. Dep't of Corr.*, 301 F. App'x 386, 388 (5th Cir. 2008). "One way in which a complaint may show the inmate is not entitled to relief is if it alleges facts that clearly foreclose exhaustion. In such a case, the district court may sua sponte dismiss the complaint for failure to state a claim." *Torns*, 301 F. App'x at 388-89 (citing *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)). Here, Plaintiff alleges that he has been discriminated against because he filed the instant lawsuit. He could not possibly have exhausted this claim before filing his Complaint.

Insofar as Plaintiff generally asserts that his housing in a maximum security unit violates his constitutional rights, he has failed to state a claim for which relief can be granted because a prisoner has no protectable liberty interest in his custody classification by prison officials. *Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir.

2003). Plaintiff's claims against Defendants Fisher, Banks, and Turner, in their individual capacities, must be dismissed for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).

III. CONCLUSION

Based on the foregoing, the Court finds that Defendants MDOC, the State of Mississippi, and Banks, Fisher, Turner, and Hinton, in their individual capacities, are entitled to sovereign immunity. The Court also finds that Defendants Banks, Fisher, and Turner, in their individual capacities are entitled to qualified immunity. Finally, to the extent that Plaintiff asserts that his housing assignment is unconstitutional retaliation for having filed the instant suit, such a claim must be dismissed without prejudice for Plaintiff's failure to exhaust administrative remedies pre-suit. A Rule 16(a) Order will follow so that case management deadlines can be set for Plaintiff's remaining claims against Defendant Hinton, in his individual capacity.

Accordingly, **IT IS HEREBY ORDERED** that the Motion to Dismiss Based on Eleventh Amendment and Qualified Immunity (ECF No. 60) filed by Defendants Banks, Fisher, Turner, MDOC, the State of Mississippi, and Hinton, in his official capacity only, is **GRANTED**. Plaintiff's retaliation claim is dismissed without prejudice for failure to exhaust administrative remedies. All other claims against Defendants Banks, Fisher, Turner, MDOC, the State of Mississippi, and Hinton, in his official capacity, are dismissed with prejudice because Defendants are entitled to their respective sovereign and qualified immunity.

19

**SO ORDERED AND ADJUDGED,** this the 27th day of November, 2017.

<u>*s/ John C. Gargiulo*</u>
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE